**In re N–REN CORP., Debtor.**

**Martha Hildenbrand PERIN, Movant,**

**v.**

**N–REN CORP., Debtor.**

**Bankruptcy No. 1–86–00144.
Contested Docket E.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Oct. 8, 1986.

Lawrence R. Elleman, Cincinnati, Ohio, for movant.

Jeffrey Marks, Cincinnati, Ohio, for debtor.

I. William Cohen, Detroit, Mich., for Creditors Committee.

Thomas L. Gabelman, Eric C. Okerson, Cincinnati, Ohio, for lender.

## DECISION AND ORDER ON MOTION TO MODIFY STAY (PERIN)

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 11 case, movant seeks relief from the § 362 automatic stay with respect to a large acreage which she sold to debtor and upon which she holds a mortgage. The matter came on for final hearing. As anticipated in our pretrial order of July 23, 1986, the issues to be decided upon the final hearing were whether movant was entitled to relief pursuant either to § 362(d)(1) or § 362(d)(2), i.e., whether movant was adequately protected, and whether the property was necessary to an effective reorganization.

Debtor is in the business of manufacturing and marketing nitrogen fertilizer and carbon dioxide products, carrying on such operations at plants in Illinois and at other locations well west of Cincinnati. The property here in question consists of 2,287.- 82 acres of essentially unimproved land located in Brown County, Ohio, some 50 miles east of Cincinnati. Debtor purchased the property from movant in 1975. Movant holds a mortgage on the property, and debtor, in connection therewith, gave her a promissory note in the principal amount of $750,000.00, the note requiring annual payments of interest only at the rate of 6% per annum ($45,000.00 per year) payable on January 1 of each year. Movant's mortgage is the first lien on the property. There is an outstanding second mortgage thereon held by debtor's primary lending group, such second mortgage being but part of the collateral held by such lending group on assets of debtor. It is undisputed that the indebtedness of debtor to movant as of August 15, 1986 was $823,125.000, and that interest accrues on the obligation at the rate of $3,750.00 per month. In addition, real estate taxes on the property are due and owing in the amount of $2,243.14.

Apart from eliciting the foregoing background information as to which there was essentially no controversy, the hearing was devoted to receiving testimony of two appraisers, one for each of the parties. Debtor's appraiser, William Case, appraised the property at $862,500.00. Though he said that 2,050 acres of the total were non-income producing in character, he arrived at an average valuation of $355.00 per acre, and assigned a value of $61,000.00 to buildings on the property. He included a premium because he regarded the mortgage as assumable. That is, because the interest rate for the mortgage loan was 6%, below market rates, he felt that the appraisal should be increased. He supported his appraisal by comparable sales. Movant's appraiser was Joseph F. Rippe. He reached a valuation of $400,000.00 based upon a valuation of $100.00 per acre for 1,500 acres which are not usable either for farming or pasture land; $500.00 per acre for 300

acres in connection with the tobacco base on the property; and $200.00 per acre for 500 acres which he regarded as pasture land. If the mortgage were assumable by a purchaser, he would add a premium of $100,000.00 to the appraisal of $400,000.00.

After carefully reviewing the testimony of both appraisers, we have reached the conclusion that it cannot be said that there is an equity cushion to provide adequate protection to movant. That is, we do not believe that it can reliably be said that the value of the property exceeds the amount of movant's claim. We say this particularly after considering the Case appraisal. That appraisal is for the property at fair market value, but no allowance was made for a real estate commission upon sale. There was testimony that such a commission would amount to at least 5% of the sale price. Additionally, we have some reservations about the comparable sales offered by Case. All of the sales regarded by Case as comparable were for tracts considerably smaller in size than the subject tract. The only sale which does not suffer from this disparity is the prior sale of the subject property itself. It was sold by movant and purchased by debtor for $750,000.00 in 1975, with movant taking a 6% mortgage, well below the market in 1975. There is no indication that Brown County property has increased in value since 1975. In addition to the foregoing, we must observe that appraisal is not an exact science, and any appraisal figure which may be offered is subject to a substantial tolerance. In this case, the purported equity cushion which would exist if we accepted Case's appraisal is less than 5% of debtor's indebtedness to movant. We consider this to be within the range of error and cannot conclude that an equity cushion exists. Since we find no equity cushion, there is no room for preservation of the cushion by monthly payments as proposed by debtor. The suggestion of monthly payments would be useful only in a factual situation where there was an existing equity cushion, the prevention of erosion of which would be relevant.

This conclusion also disposes of the contention by debtor that the property is necessary to an effective reorganization. No functional relationship was made out between this large unimproved tract of Ohio land, and the manufacture of fertilizer products engaged in by debtor at locations considerably west of Ohio. The only testimony offered by debtor in support of the necessity of this property to an effective reorganization, is that upon a sale, any excess over the first mortgage could be paid to the primary lender group which is funding debtor's present operations. Since we are not persuaded that any amount would be available for that purpose upon a sale, we conclude that the subject property is not necessary to an effective reorganization.

The final hearing on movant's motion to modify stay was also the occasion for a hearing on her objection to an order authorizing the entering into of a contract between debtor and one Winkle regarding planting the tobacco base. With the lifting of the stay, that matter becomes appropriate for further consideration in the state court and is mooted here.

The motion to modify stay is granted.

So Ordered.